UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AMY COMFORT, *on behalf of herself and all others similarly situated*,

                      Plaintiff,

-vs-

RICOLA USA, INC.,

                      Defendant.

DECISION AND ORDER

19-CV-6089 CJS

_____

## APPEARANCES

For Plaintiff:
    Michael Robert Reese, Esq.
    Reese LLP
    100 West 93rd St., 16th Floor
    New York, NY 10025
    (212) 643-0500

    George V Granade, II, Esq.
    Reese LLP
    8484 Wilshire Boulevard, Suite 515
    Los Angeles, CA 90211
    (212) 643-0500

    Jason Sultzer, Esq.
    The Sultzer Law Group, P.C.
    85 Civic Center Plaza, Suite 104
    Poughkepsie, NY 12601
    (845) 483-7100

    Joshua Harris Eggnatz, Esq.
    Eggnatz Pascucci, P.A.
    7450 Griffin Road, Suite 230
    Davie, FL 33314
    (954) 889-3359

For Defendant:
    Paul Wendell Garrity, Esq.
    Shin Young Hahn, Esq.
    Sheppard Mullin Richter & Hampton LLP
    30 Rockefeller Plaza, 24th Floor
    New York, NY 10112
    (212) 653-8700

## INTRODUCTION

**Siragusa, J.** This class action complaint is before the Court on Defendant's motion to dismiss for failure to state a cause of action. Fed. R. Civ. P. 12(b)(6). After reviewing the papers in support of, and opposition to, the defense motion, and hearing oral argument, the Court determines that Plaintiff has not plausibly alleged facts to support claims for unlawful deceptive acts and practices, false advertising, unjust enrichment, and negligent misrepresentation. However, the New York General Business Law claims may go forward. Therefore, the Court grant's Ricola's motion in part, denies in part.

## FACTUAL BACKGROUND

Plaintiff Amy Comfort ("Comfort") has alleged on behalf of herself and all others similarly situated that Ricola cough drops packages contain a misleading statement: "Naturally Soothing." She contends this is misleading because the ingredients list on the package shows that the cough drops contain artificial ingredients and are not entirely made from natural ingredients. Compl. ¶ 25, Feb. 9, 2019, ECF No. 1 ("The Products uniformly claimed to be 'Naturally Soothing,' when in fact, they were not, because they contained unnatural, synthetic, artificial, and/or genetically modified ingredients, including aspartame, ascorbic acid, citric acid, isomalt, malic acid, and sorbitol.").

Comfort's complaint contains four causes of action:

FIRST CAUSE OF ACTION, Violation of the New York General Business Law § 349 (Unlawful Deceptive Acts and Practices);

SECOND CAUSE OF ACTION, Violation of the New York General Business Law § 350 (False Advertising);

THIRD CAUSE OF ACTION, Unjust Enrichment; and

FOURTH CAUSE OF ACTION, Negligent Misrepresentation.

Compl. 24, 25, 27 & 28 (class action portions omitted). Defendant Ricola USA, Inc. ("Ricola") has moved to dismiss the complaint for failure to state a cause of action. Fed. R. Civ. P. 12(b)(6).

## STANDARD OF LAW

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). A court must accept as true the well-pleaded factual allegations contained in a complaint and draw all inferences in favor of the plaintiff, *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006), though "an allegation made indefinite or erroneous by other allegations in the same complaint is not a well-pleaded allegation," *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, *Hughes v. Trans World Airlines, Inc.*, 409 US. 363 (1973). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Twombly*, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). Where a court is unable to infer more than the possibility of misconduct based on the pleaded facts, the pleader has not demonstrated that he is entitled to relief, and the action is subject to dismissal. *Id*. at 678–79. Nevertheless, "[f]act-specific question[s] cannot be resolved on the pleadings." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (second alteration in

original) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001)). Therefore, if presented with "two plausible inferences that may be drawn from factual allegations," a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Id*. See *Solak v. Hain Celestial Grp., Inc.*, No. 317CV0704LEKDEP, 2018 WL 1870474, at *2 (N.D.N.Y. Apr. 17, 2018).

New York General Business Law sections 349 and 350 state in pertinent parts as follows:

> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful....
>
> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

N.Y. Gen. Bus. Law §§ 349(a) and 350 (McKinney 2019).

## ANALYSIS

### *New York General Business Law claims*

The crux of Comfort's claim is: "Despite the presence of unnatural ingredients, Defendant knowingly markets the Products as 'Naturally Soothing' and fails to disclose material information about the Products—that some of the ingredients are synthetic or otherwise artificial. Defendant's nondisclosure is deceptive and likely to mislead a reasonable consumer." Pl.'s Mem. of Law 9, May 30, 2019, ECF No. 9. In its supporting memorandum, Ricola counters that Comfort has omitted a portion of the phrase on the packaging, which reads in its entirety: "'Naturally Soothing Relief that Lasts' (the "Soothing Statement") with the word 'Naturally' modifying 'Soothing Relief,'" and citing to the exhibit attached to the complaint. Def.'s Mem. of Law 1, Apr. 29, 2019 ECF No. 5-1.

4

In support of her position, Comfort relies heavily on the Second Circuit's decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) ("*Kellogg*"). Therefore, the Court begins with a discussion of that case, which Ricola claims is distinguishable from the subject matter.

In *Kellogg*, the district court dismissed a complaint that alleged false advertising or deceptive business practices under New York and California law. The subject was a cracker ("Cheez-It®") sold in boxes with the words "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN" in large letters on the front. The district court determined that because the ingredients list was on the side of the box, any consumer who thought that the crackers were made entirely with whole grains could see that the first ingredient was enriched white flour, not whole grain. The district court granted the defense motion to dismiss. In reversing, the Second Circuit wrote:

> Plaintiffs have adequately alleged . . . that the conspicuous "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" claims on the front and center of the Defendant's packaging communicates to the reasonable consumer the false message that the grain content of the crackers is exclusively, or at least predominately whole grain; that this false message is not dispelled by the information that each cracker is "MADE WITH 8G [OR 5G] OF WHOLE GRAIN PER SERVING," which fails to communicate that the quantity of enriched white flour exceeds the quantity of whole grain; and that the misleading quality of the message is not effectively cured by implicitly disclosing the predominance of enriched white flour in small print on an ingredients list on the side of the package. These are sufficient factual allegations to state a claim that Defendant's conduct was, plausibly, deceptive. A reasonable consumer would likely be deceived by the labeling alleged in the complaint. The district court's conclusion to the contrary was error.

*Id*. at 638–39.

Ricola argues that the rule from *Kellogg* is that *misleading* content on the front cannot be *corrected* by clarifications on the side or back panels of the package. Def.'s Mem. 5 ("The distinction between whether the back of the package *corrects* the front of the package or *clarifies* it is important."), Jun. 20, 2019, ECF No. 12. However, Ricola contends that at worst,

5

the Soothing Statement might be ambiguous, in which case the other information on the package *can* clarify it.

The Merriam-Webster dictionary defines "naturally" as follows:

**1 :** by nature **:** by natural character or ability *naturally* timid

**2 :** according to the usual course of things **:** as might be expected we *naturally* dislike being hurt

**3a :** without artificial aid hair that curls *naturally*

**b :** without affectation speak *naturally*

**4 :** with truth to nature **:** realistically

"naturally." Merriam-Webster Online Dictionary. 2019. http://www.merriam-webster.com (Sept. 9, 2019). Black's Law Dictionary defines "natural" as follows:

**natural** *adj.* (14c) **1.** In accord with the regular course of things in the universe and without accidental or purposeful interference <a natural death as opposed to murder>. **2.** Normal; proceeding from the regular character of a person or thing <it is natural for a duck to fly south in the winter>. **3.** Brought about by nature as opposed to artificial means <a natural lake>. **4.** Inherent; not acquired or assumed <natural talent>. **5.** Indigenous; native <the original or natural inhabitants of a country>. **6.** Of, relating to, or involving a birth <natural child as distinguished from adopted child>. **7.** Untouched by civilization; wild <only a small part of the forest remains in its natural state>. — **naturally,** *adv.*

NATURAL, Black's Law Dictionary (11th ed. 2019).

Ricola argues that nothing on the package suggests that the cough drops contain only natural ingredients and that the Soothing Statement refers to the natural ingredient that provides the long-lasting relief—menthol[1]—which Comfort does not suggest is an artificial

---

[1] "[A] crystalline alcohol $C_{10}H_{20}O$ that occurs especially in mint oils and has the odor and cooling properties of peppermint." "menthol." Merriam-Webster Online Dictionary. 2019. http://www.merriam-webster.com (Sept. 9, 2019). The Court will consider the entire package for Ricola cough drops, notwithstanding that the complaint at Exhibit A only shows pictures of the front of the package. Both parties have relied on other portions of the packaging to support their positions on this pending motion and Comfort must necessarily have relied on the entire package to allege that the cough drops contain artificial ingredients when alleging so in the complaint. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint

ingredient. Def.'s Mem. of Law 10. Ricola maintains that "[a] reasonable consumer acting reasonably would perceive the Soothing Statement to mean that there is some ingredient or an ingredient that was naturally derived that provides soothing relief. Ricola's labeling is truthful and accurate." Def.'s Mem. of Law 10.

In *Kellogg*, the district court reasoned that since all crackers are made from grains, the phrases "whole grain" or "made with whole grain," and the number of grams of whole grain per serving was sufficient to make potential customers aware that not all of the cracker was made with whole grain. Further, the district court reasoned that the consumer could conclude that the cracker was not entirely made with whole grain since the ingredients list showed the first, and therefore most prevalent ingredient by weight, to be enriched white flour. *Kellogg*, 910 F.3d at 644-45 (citing to 21 C.F.R. § 101.4 "generally requiring ingredients to be listed 'in descending order of predominance by weight.'"). However, the Second Circuit determined that the front of the package as designed was "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id*. at 636 (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

Ricola cites to a Northern District of Illinois case which it argues is "highly instructive." Def.'s Mem. of Law 10. *In re: 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation*, 275 F. Supp. 3d 910 (N.D. Ill. 2017) ("*Parmesan Cheese*"), is a multi-district litigation case involving, among others, New York General Business Law §§ 349 and 350. The district court recognized that "'a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer,'" quoting the Second Circuit's decision in *Fink*, 714 F.3d at 741. *Parmesan Cheese*, 275 F. Supp. 3d at 921. It also

---

to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference....").

7

recognized that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id*. at 922 (quoting *Fink*, 714 F.3d at 742). Finally, the court stated:

> These principles yield this rule: Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous: if so, context can cure the ambiguity and defeat the claim, but if not, then context will not cure the deception and the claim may proceed.

*Parmesan Cheese*, 275 F. Supp. 3d at 922.

Since this case is at the preliminary stage, the Court is required to "draw all inferences in favor of the plaintiff." *Allaire Corp.*, 433 F.3d at 249–50. The Second Circuit's decision in *Mantikas* does not support Ricola's argument that labeling on the front of a package could be ambiguous and that additional labeling on the sides or back could clarify the ambiguity and render the front of the package not deceptive. All Plaintiffs need to show is that "the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas*, 910 F. 3d at 636 (quoting *Fink*, 714 F.3d at 741) (other citations omitted). The Court finds that Plaintiffs have plausibly alleged that a reasonable consumer could be misled into believing that all the soothing ingredients were natural.

### *Unjust enrichment & negligent misrepresentation claims*

The Court now turns to Comfort's claims for unjust enrichment and negligent misrepresentation. The Second Circuit addressed the elements of a New York unjust enrichment claim as follows:

> Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *E.g., Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000) (internal quotation marks omitted).

8

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).

Comfort has alleged that Ricola's misrepresentations concerning the ingredients of their cough drops caused her to pay a premium price for those cough drops, which she claims have "no market value." Compl. ¶ 73–74. She asks either for "damages equal to the aggregate purchase price paid," or "damages in the amount of the difference between the premium purchase price charged for [Ricola's] Products and the true market value of the Products without the false 'Naturally Soothing' representation." *Id*. However, Comfort's unjust enrichment claim merely restates her tort claims under the New York General Business law, and therefore must be dismissed. *See Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018) ("'If the plaintiff is simply restating a contract or tort claim, then unjust enrichment is not available.' *Buonasera*, 208 F.Supp.3d at 567. Axon's unjust enrichment claim merely duplicates her other causes of action based on the same alleged misrepresentations. It must therefore be dismissed.")

Regarding Comfort's negligent misrepresentation claim, pursuant to the Second Circuit, she must plausibly allege the following: (1) that Ricola owed her a duty of care to give her correct information due to a "special relationship"; (2) Ricola made a false representation that it should have known was incorrect; (3) Ricola knew the information it supplied to Comfort was wanted by Comfort and concerned a serious purpose; (4) Comfort intended to rely and act upon the information; and (5) Comfort reasonably relied on the information to her detriment. *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

The "special relationship" "normally requires 'either actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *DiBartolo v. Abbott Labs.,*

9

914 F.Supp.2d 601, 623–24 (S.D.N.Y. 2012) (quoting *Marcellus Constr. Co., Inc. v. Village of Broadalbin,* 302 A.D.2d 640, 640, 755 N.Y.S.2d 474 (3d Dep't 2003)). Further,

> "[A] 'special relationship' requires 'a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified.'" *Prime Mover Capital Partners L.P.,* 793 F. Supp. 2d at 674 (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 788 (2d Cir. 2003)). "Courts have routinely held that an arms-length commercial transaction, without more, does not give rise to a special duty to speak with care." *Henneberry v. Sumitomo Corp. of America,* 532 F. Supp. 2d 523, 539 (S.D.N.Y. 2007); *see also Foxley v. Sotheby's Inc.,* 893 F. Supp. 1224, 1232 (S.D.N.Y. 1995) ("Generally, a special relationship requires prior or ongoing interaction. An arm's length business relationship is not enough.") (citations omitted).

*Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 293 (W.D.N.Y. 2014).

The complaint has no allegations that Comfort has a "special relationship" with Ricola. On this point, Comfort relies on *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013), to argue that, "[b]ecause of the medicine-like health representations regarding the products," a special relationship existed to support a claim for negligent misrepresentation. Pl.'s Mem. of Law 14. In *Hughes*, the district court found that the plaintiff had sufficiently pled that defendant held itself out as holding a special expertise regarding the purported health benefits of Ester-C. *Id*. at 475. The plaintiffs there also plead that the defendant's website had a section entitled "Ask an Expert," "which states that the 'expert' 'take[s] an Ester–C tablet daily, all year long, because it is gentler on the stomach *and because of all the clinical research that supports the use of this product.*'" *Id.* Further, the district court wrote:

> That same page also states that Ester–C "*has good clinical research* and is the easiest form of vitamin C to take in my opinion because it is non-acidic. *The company is also completely committed to clinical studies.*" http://www.ester-c.com/FAQ.htm. Plaintiffs also assert that the product's labeling also contains language that, at the very least, suggests some level of medical or scientific backing for its claims. (*See* Product Labels, Ex. A ("# 1 Pharmacist Recommended Brand"; "Ester–C gives you the added benefits of C–Sorb[, and] Ester–C, together with C–Sorb and naturally occurring metabolites, works synergistically to quickly absorb into your system and stay there, providing

immune system support"; "As a unique, delicious form of Vitamin C, Ester–C is well retained, providing immune system support [, p]lus Ester–C [ ] can be taken all year long to support heart health, antioxidant health, healthy bones and joints, and healthy skin, hair and nails").)

*Id.*

Comfort argues that in this case, like the situation in *Hughes*, Ricola "represents the Products, like Ester-C, as something that can help alleviate ailments associated with sickness. Indeed, Defendant admits the Products are 'over-the-counter (OTC) drug products.' Def. Mem. 5. Defendant also admits its Products promise to provide a 'cough suppressant' that provides 'soothing relief' or are otherwise an 'Oral anesthetic.' *See* Compl., Ex. A; Def. Mem. 3." Exhibit A has copies of the packages from Ricola that mention, "Herb Throat Drops," "Cough Suppressant – Throat Drops," or "Supplement Drops." Compl. Ex. A. The pictures of the side or back portions of the packaging comment that, "For over 80 years, Ricola has been making naturally effective products using the highest quality Swiss herbs for soothing relief of sore throats." Pl.'s Mem. of Law 15.[2]

The Court does not find that Comfort has plausibly alleged a "special relationship" between her and Ricola merely because of the wording on the packages of cough drops. The package makes nowhere near the representations that were present in the *Hughes* case and the writings on the Ricola packages do not plausibly show that Ricola was holding itself out to be a medical advisor to Comfort or any other consumer of their cough drops. The complaint shows that Comfort was a buyer, and Ricola a seller—nothing more. Accordingly, the Court will grant Ricola's motion to dismiss the negligent misrepresentation cause of action as well as the others.

---

[2] Comfort also references information on Ricola's website. The Court will not consider that information since, unlike the packaging, the complaint did not include references to Ricola's website.

11

CONCLUSION

For the foregoing reasons, the Court grants, in part, Ricola's motion to dismiss, ECF No. 5, Plaintiff's unjust enrichment & negligent misrepresentation claims for failure to state a claim. The Court denies Ricola's motion to dismiss Plaintiff's New York General Business law claims. Therefore, the first and second causes of action may go forward. Plaintiff's third and fourth causes of action are dismissed under Federal Rule of Civil Procedure 12(b)(6).

DATED: November 14, 2019
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge